Common Pleas Court of Cuyahoga County.

HARTWIG REALTY CO. V. CITY OF CLEVELAND, ET AL.

Decided December 2, 1933.

*Bloomfield, Orr & Vickery,* and *H. H. Gorman,* for plaintiff.

*W. G. Kerr,* law director, and *John A. Smith,* for defendant.

SKEEL, J.

This is an action brought by the Hartwig Realty Company as a taxpayer of the city of Cleveland for an injunction restraining the city of Cleveland, its mayor and its director of Public Utilities from using the income and receipts from the sale of water for the maintenance and operation of sewage disposal plants. The plaintiff also asks that the city be ordered to return to the water division the amount which has been diverted since 1922 for the maintenance and operation of sewage disposal plants.

In its petition plaintiff alleges that in 1922 the city of Cleveland adopted an ordinance placing the sewage disposal plants of the city under the charge and management of the division of water and provided "the operation of sewage disposal plants shall be treated and construed as being part of the operation of water purification." Since that time, plaintiff alleges, the entire cost of operating and maintaining the city's sewage disposal plants has, without any further appropriations or authorizing ordinances, been paid from the funds of the water division obtained by way of water rents. Plaintiff claims that this ordinance was invalid and the action taken under it, therefore, was without any authority at law. It alleges further that the use of water rents for sewage disposal purposes is contrary to the provisions of Section 3959, General Code, and to the provisions of certain sections of the charter of the city of Cleveland. Plaintiff further claims that in creating the rates which now prevail in the city of Cleveland with reference to water rental, there has been no provision made for the operation and maintenance of sewage disposal plants. Plaintiff also states in its petition that if the diversion of funds is continued, either water rents will have to be increased or payment upon bonds issued by the water department can not be met from the revenues received from water rents, and that if it becomes necessary to pay for said water works bonds out of general funds of the city, this will operate to limit the borrowing capacity of the city for governmental purposes and will seriously impair its credit.

The defendants admit the city's use of water rents in maintaining and operating its sewage disposal plants. They claim, however, first: Section 3959, General Code, restricting the use of water rents to water department purposes is not applicable to the use of Cleveland and is unconstitutional; second: that the entire matter has been decided in the case of *Akuszewsky* v. *Cleveland,* decided in the Court of Appeals of this county, which case bars this action by reason of the rule of *res adjudicata.*

Plaintiff has filed a reply in which it seeks to void the operation of the rule of *res adjudicata* because of an alleged

change of conditions since the decision in the Akuszewsky case and because that case was not tried upon its merits.

The pleadings and the evidence raise several issues which will be considered in order.

I. The defendants, although admitting the corporate capacity of the plaintiff and its status as a taxpayer of the city of Cleveland, claimed that plaintiff did not have authority at law to bring the action because it had had no pecuniary interest in the outcome of the case. Numerous citations from digests, text books and decisions outside Ohio were presented in support of this contention, which have been considered by the court.

Whatever may be the law in other states this question may be disposed of by reference to Sections 87 and 90 of the charter of the city of Cleveland which authorizes a taxpayer, in the event the director of law upon demand refuses to bring a suit, to institute an action against the city to enjoin "the misapplication of funds."

The provisions of the charter make no reference to any pecuniary interest and there is no reason for a court to insert such a condition into the sections referred to.

Even without such a clear expression in the charter of the city of Cleveland, there seems to be ample authority in the state of Ohio for a taxpayer under circumstances similar to those in the case at bar to maintain this action.

II. The defendants claim that Section 3959, General Code is unconstitutional and does not apply to a charter city such as the city of Cleveland. Section 3959, General Code provides:

"After paying the expenses of conducting and managing the water works, any surplus therefrom may be applied to the repairs, enlargement or extension of the works or of the reservoirs, the payment of the interest of any loan made for their construction or for the creation of a Sinking Fund for the liquidation of the debt. The amount authorized to be levied and assessed for water works purposes shall be applied by the Council to the creation of the Sinking Fund for the payment of the indebtedness incurred for the construction and extension of water works and *for no other purpose whatever.*"

Thus the General Code of Ohio permits cities to use any

surplus received from water rents, (a) for the repairs, enlargement or extension of the water works, (b) for the payment of interest upon loans made for their construction, and (c) for the creation of a sinking fund for the liquidation of such loans and "for no other purpose whatever." The claim that the section is unconstitutional and does not apply to charter cities might have been worthy of discussion had the matter not already been decided by the Supreme Court of Ohio in the case of *City of Cincinnati* v. *Roettinger*, 105 O. S., 145. The first syllabus of this case reads as follows:

"Section 3959, General Code, is constitutional and operates as a valid limitation upon the uses and purposes for which revenues derived from municipally owned water works may be applied. By virtue of the provisions of that section surplus revenues derived from water rents may be applied only to repairs, enlargement or extension of water works, or of the reservoirs and to the payment of the interest of any loan made for their construction or for the creation of a sinking fund for the liquidation of the debt."

This court is bound under the ruling in that case to hold Section 3959, General Code, constitutional and applicable to the city of Cleveland notwithstanding the fact that Cleveland operates under a home rule charter.

III. The defendants, however, claim that sewage treatment and disposal is part of the process of purification of water for drinking purposes and expenditures of funds for that purpose do not come within the provisions of Section 3959, General Code.

This raises a question of fact rather than a question of law and a great deal of evidence was introduced at the trial bearing upon this point. It is unnecessary for the court to review in this opinion the evidence introduced on this point. The court is satisfied that plaintiff has shown not only by the preponderance of the evidence, but beyond any doubt, that the treatment and disposal of sewage in the city of Cleveland is not a part of the functions of the division of water. According to the almost unanimous opinion of experts the treatment of sewage is of no practical assistance in the purification of Cleveland's drinking water. The two Cleveland filteration and treatment plants are apparent-

ly second to none in the United States. They are managed and operated by water purification engineers whose reputation is outstanding. The efficiency of the plants is far beyond the needs of the community and affords ample protection against water borne diseases. The evidence established clearly that treatment of sewage was unnecessary so far as water purification in Cleveland is concerned.

There are ample reasons for treatment and scientific disposal of sewage in and about Cleveland. The duty of protecting beaches during the bathing season, the duty of clearing up unsightliness about the shores and the duty of keeping the lake clean so as not to contaminate water supplies of other lake towns and cities which do not have water treatment plants equal to that of Cleveland are sufficient justification for sewage treatment. The cost, however, of such treatment should not and cannot under the law be charged against the revenues received from water rents.

The evidence showed that many municipalities in Cuyahoga county whose residents were served by the Cleveland water department were either disposing of their own sewage or paying the city of Cleveland for sewage disposal and treatment. As a result the citizens of these municipalities have been charged twice for sewage disposal and treatment.

A privately owned public utility which used such a method of charging its customers would be subjected to severe censure. A municipality, therefore, which should have the interests of the citizenry in mind, certainly should discontinue a practice so obviously unfair. The statutes of Ohio authorize a proper method of charging for sewage treatment and disposal. There is no reason why the city of Cleveland should not take advantage of these statutes. This is especially true in view of the fact that other cities apparently do not use their water rents for sewage treatment and disposal purposes.

The defendants argued in connection with this contention that the ordinance passed in 1922 setting forth that "the operation of sewage disposal plants shall be treated and construed as being part of water purification" was determinative of this issue.

Whether the operation of sewage disposal plants are part of a water purification process is naturally a question of fact. The ordinance, therefore, could have no bearing whatsoever on the question. It is apparent from the testimony that the ordinance relied upon by the city of Cleveland is a mere subterfuge, contrary to Section 3959, General Code, and, therefore, void.

IV. Finally, the defendants claim that the entire matter has been decided in the case of *Akuszewsky* v. *Cleveland*. That suit was brought on August 27, 1926, by Henry J. Akuszewsky as a taxpayer against the city of Cleveland to enjoin the city and its director of public utilities from using funds of the division of water of the city of Cleveland for any purposes excepting "paying expenses, maintaining, repairing and paying the debts of the water department." The petition filed in the Court of Common Pleas sets forth that funds of the water department had been used for sewage disposal purposes and to pay for chlorination of the shore waters of Lake Erie, contrary to the General Code of Ohio and to the charter of the city of Cleveland. On January 29, 1927, the journal entry of the Court of Common Pleas sets forth that the court finds plaintiff is not entitled to the relief prayed for. Thereafter the case was carried to the Court of Appeals as case No. 8082, and on January 17, 1929, the journal entry of that court shows that the appeal was dismissed.

The journal and docket entry failed to show that any briefs were filed in the Court of Appeals and failed to show that the case was ever argued. It is doubtful to say the least, whether the Akuszewsky case was ever tried upon its merits.

But there is another and stronger reason why the Akuszewsky case does not bar the present action. It appears from the evidence that at the time the Akuszewsky case was before the courts, the treatment of drinking water by chemical processes was still in an experimental stage. The science of water treatment is apparently of very recent origin. Prior to the year 1912, no disinfecting chemicals were used by the Cleveland water department. Not until 1916 was any appreciable advance made in the use of chlorine. As late as 1925 half of the water supply of the

city of Cleveland was delivered to customers unfiltered and treated in only a rudimentary way with chlorine. Thus in 1926-9 while apparently most experts believed sewage treatment was unrelated to problems pertaining to drinking water, some, especially the older ones, felt that money spent on sewage disposal did benefit the water department in its task of supplying potable water. There was, therefore, some justification for the holding in the Akuszewsky case because of this difference of opinion at the time that case was decided.

The evidence clearly shows that since that time conditions have changed. Water is now treated by an entirely different method. Instead of using chlorine alone, chlorine is used in conjunction with ammonia and the disinfection is accomplished by means of a different chemical known as chloramine. This process permits the treatment of water prior to the time it enters the filters, allows the use of a large percentage of chlorine without producing undesirable tastes and slows the disinfecting process so as to permit the chemicals to operate up to the time the water is drawn from the consumer's taps. The process was perfected by the staff working at the Baldwin Reservoir in Cleveland. It was put into operation at the west side plant in December, 1929, and at the Baldwin plant on January 4, 1930. The reports of Cleveland's water department show conclusively that whatever advantage sewage disposal may have been to water purification prior to 1930, the present operation of the water filtration plants is not aided in any way by sewage treatment and disposal. This was admitted by the witnesses called on behalf of the defendant.

Since the perfection of the chloramine process, other cities have changed their methods of water purification in an attempt to copy the Cleveland system, and the results obtained in those cities, notably in Detroit, bear out the conclusions reached in Cleveland.

The evidence shows clearly that there has been a material change in the method of water purification in Cleveland since the trial of the Akuszewsky case. The law is clear that where such a change occurs, the former judgment cannot be used as a bar against a later suit. 11 O. J. 1002, *Courtland* v. *Willis;* 15 Oh. 142, *State* v. *Eagle Insurance*

*Company;* 50 O. S. 252, 274. *Toledo Railway Co.* v. *Toledo Company;* 114 O. S., 98 Barnes, 11 Dec. Rep. 848.

In view of the foregoing it has not been necessary to consider plaintiff's claim regarding impairment of the city's credit, nor the effect of the city charter upon the ordinance relied upon by the defendants.

The court is of the opinion that the injunction prayed for should be allowed and that the defendant, the city of Cleveland, its director of public utilities, and its mayor and their successors in office be perpetually enjoined from using income or receipts from the sale of water for the construction, maintenance and operation of any of the sewage disposal plants of the city of Cleveland.

Coming now to the second request in the prayer of plaintiff's petition,—that the defendants be required to collect and refund to the department of public utilities, division of water and heat, the funds heretofore diverted from the receipts and income of the municipal water works to the construction, maintenance and operation of sewage disposal plants,—the court is of the opinion that such an order should issue. The evidence shows that from 1922 to the time of trial there has been so diverted the sum of $1,489,136.05. In view, however, of the fact that the chloramine process was not placed into effect until January 4, 1930, the court feels that recovery should be limited to the period beginning on that date.

It is the duty of a court of equity to dispose of all issues if possible. The recovery, therefore, will run for the period commencing January 4, 1930, and ending November 22, 1933, the date upon which the injunction became effective, in the amount of $637,861.80.

A journal entry may be prepared along the lines above indicated.